UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DESHAWN CRAWFORD,<br><br>    Plaintiff,<br><br>v.<br><br>WARDEN D. NEVENS , *et al.*,<br><br>    Defendants. | Case No. 2:11-CV-00376-KJD-CWH<br><br>**ORDER** |

Before the Court is Defendants Dr. Romeo Aranas and Matthew Gonzalez's Motion to Dismiss (#11).  Plaintiff Deshawn Crawford has filed an opposition (#17) and the moving Defendants have filed a reply (#18).  Without seeking leave of the Court, Plaintiff filed a sur-response (#20) and Defendants filed a Motion to Strike (#21).

I.  Background

Plaintiff is an inmate at High Desert State Prison ("HDSP").  According to the Complaint, Plaintiff  has severe asthma and, apparently prior to incarceration, was treated with albuterol.  The Complaint alleges that in February 2010, Dr. Aranas denied Plaintiff's request for an inhaler.  Aranas did not get any medical history from Plaintiff, did not examine Plaintiff and told him that nothing was wrong with him, disregarding Plaintiff's complaints and medical history.

Plaintiff is confined to his cell almost twenty-four hours per day. On the night of April 29, 2010, plaintiff suffered a severe asthma attack, could not breathe, and pressed the emergency call button for assistance.  According to the Complaint, Gonzalez did not respond for 45 minutes and then refused to get help. The Complaint avers that when Plaintiff filed a grievance,  Gonzalez threatened to have other inmates or officers attack Plaintiff, poison his food, and destroy his mail. Plaintiff claims to have suffered numerous asthma attacks, causing inability to breathe, headaches and dizziness.

The Court issued a Screening Order (#4) and dismissed all claims except the Eighth Amendment claims against Dr. Aranas and Gonzalez.

II.  Discussion

   A.  Prison Litigation Reform Act

Plaintiff's Complaint alleges violation of his constitutional rights when Dr. Aranas denied his request for an inhaler and failed to perform a medical examination and when Gonzalez allegedly retaliated against him.  Defendants argue that these claims were never properly grieved.  According to Defendants, the only claim that Plaintiff properly grieved was the deliberate indifference claim against Gonzalez.

The Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2002). Failure to exhaust administrative remedies is an affirmative defense and the defendants bear the burden of raising and proving failure to exhaust. Jones v. Bock, 549 U.S. 199, 212-14 (2007).  Proper exhaustion requires that the plaintiff utilize all steps made available by the agency and comply with the agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 89-90 (2006). Proper exhaustion must be completed before a complaint may be filed. Id. at 83-84. See Roberts v. Klein, 770 F. Supp. 2d 1102 (D. Nev. 2011). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion

rather than in a motion for summary judgment. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.2003). In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id.

### B. Legal Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

Plaintiff is representing himself *pro se*. Courts must liberally construe the pleadings of *pro se* parties. See United States v. Eatinger, 902 F.2d 1383, 1385 (9th Cir. 1990). However, *pro se* litigants must supply a minimum factual basis for the claims they assert against defendants. Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

### C. Failure to Exhaust Administrative Remedies

"Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so properly (so that the agency addresses the merits)." Woodford, 548 U.S. at 89. Administrative Regulation 740 ("AR 740") is the process by which inmates in HDSP pursue their administrative remedies. For plaintiff to exhaust available remedies at the time of his injury, AR 740 requires the following: (1) filing of an Informal Grievance, which "shall be reviewed and responded to by the inmate assigned caseworker"

in consultation with other appropriate staff; (2) a First Level Grievance, which "shall be reviewed and responded to by the Warden;" and (3) a Second Level Grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations, Assistant Director of Support Services, Offender Management Administrator, Medical Director, or Correctional Programs Administrator." AR 740.  Each grievance is only to contain one issue.  AR 740.09(2)(f).

Plaintiff failed to properly grieve his claims against Dr. Aranas and his retaliation claim against Gonzalez.  At 6:00 P.M. on April 29, 2010, a few hours after Plaintiff was allegedly neglected by Gonzalez, Plaintiff filed an Emergency Grievance which complained only that Gonzalez had been deliberately indifferent to his medical needs by neglecting to answer the emergency call button until "20 minutes after the initial push of my call button."  The Emergency Grievance did not mention Plaintiff's medical diagnosis or any charge of retaliation.  It was rejected because it was not a qualifying emergency. See AR 740.10.

Plaintiff filed an Informal Grievance the next day.  The Informal Grievance only mentioned Gonzalez's alleged indifference to his serious medical need by not responding until "20 minutes after the initial push of my call button."  Gonzalez's lieutenant responded to Plaintiff's Informal Grievance by stating that an investigation would take place and corrective measures would be taken if necessary.  It did not mention Plaintiff's other claims.

Nearly a month after the incident, on June 25, 2010, Plaintiff filed a First Level Grievance combining three claims, two of which he had never grieved before.  For the first time, Plaintiff claimed that he was misdiagnosed by a prison doctor and complained that he was retaliated against by Gonzalez.  He also included his claim of neglect by Gonzalez.  This grievance was rejected because it was improperly filed and contained more than one complaint in violation of the grievance procedure.

Plaintiff did not correct the deficiencies in his First Level Grievance, but instead filed a Second Level Grievance.  In Plaintiff's Second Level Grievance, he claims to have pushed the emergency call button for "30 to 45" minutes prior to receiving attention from Gonzalez.  The

4

Second Level Grievance also mentions the alleged retaliation by Gonzalez, but does not contain any claims relating to medical staff including Dr. Aranas. The grievance was denied because there was no evidence other than the written statement that the event actually occurred, but Deputy Director Cox noted that the unit staff were counseled regarding attentiveness to their duties. Plaintiff filed this lawsuit in March, 2011.

Plaintiff's claim against Dr. Aranas appear in the First Level Grievance only. Plaintiff's claim for retaliation against Gonzalez appears in the First and Second Level Grievances only. Additionally, these claims were improperly combined with Plaintiff's indifference claim against Gonzalez. Plaintiff did not follow the grievance procedure provided in AR 740. He has not exhausted his administrative remedies for his claim against Dr. Aranas or his claim of retaliation by Gonzalez and accordingly, these claims are dismissed.

### D. Legal Standard for Summary Judgment

The only remaining claim is for deliberate indifference by Gonzalez. In their motion, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. Defendants set forth the standard for summary judgment, provided a statement of undisputed material facts, and attached documents verified by affidavit. Plaintiff was notified of the significance of a motion for summary judgment pursuant to Klingele v. Eikenberry and Rand v. Rowland (#14). Plaintiff acknowledged his awareness that he was responding to a motion to dismiss and motion for summary judgment in his opposition and attached exhibits to it. Accordingly the Court will treat Defendants' motion as one for summary judgment and consider matters outside the pleadings. See Fed. R. Civ. Pro. 12(d).

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the

initial burden of showing the absence of a genuine issue of material fact.  See, Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### E.  Eighth Amendment Violation Based on Indifference by Gonzalez

A prison official violates the Eighth Amendment when: (1) the condition of confinement objectively poses a substantial risk of serious harm (extreme deprivation); and (2) the prison official knows of the substantial risk and ignores it (deliberate indifference or criminal recklessness). Farmer v. Brennan, 511 U.S. 825, 834-37 (1994); Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Both of these factors must be present to establish a violation of the Eighth Amendment. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir.2002). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.2002).

Plaintiff's claim for deliberate indifference fails because Gonzalez was not aware of the medical emergency prior to arriving at Plaintiff's cell five minutes after his shift began.  When an inmate pushes his emergency call button, a light in the unit's control bubble illuminates.  Prison records indicate that Gonzalez arrived for his shift at 3:55 p.m.  Plaintiff claims that he had an asthma attack at approximately 4:10 p.m. When he arrived at the control bubble to relieve the day-shift officers, he noticed between eight and ten cell call lights were blinking.  Gonzalez was briefed

6

by the other officers and inventoried weapons and ammunition as part of his responsibilities as the guard on duty.  Gonzalez then proceeded to the cells with illuminated lights in numerical order.  He attended to four cells before reaching Plaintiff's cell.  According to Gonzalez, no more than five minutes had elapsed since he arrived at the unit.  Gonzalez first became aware of Plaintiff's medical needs when he arrived at his cell.  Gonzalez offered to call emergency medical staff, but Plaintiff declined.  This does not demonstrate that Gonzalez was aware of a substantial risk, but chose to ignore it.  Additionally, Plaintiff has not demonstrated that any further injury resulted from Gonzalez's delay in responding to the emergency call.  Accordingly, the undisputed facts show that Gonzalez was not deliberately indifferent to Plaintiff's medical needs and summary judgment is granted on this claim.

### F. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in a certain situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)).; Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). Analyzing whether a government official is entitled to qualified immunity involves two questions: (1) whether the facts alleged show the official violated a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would know the conduct was unlawful. Id. The term "clearly established" means that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 639 (1987)). The key inquiry is whether the unlawfulness of the act would have been apparent to a reasonable person in the light of pre-existing law at the time the act was committed. See Hope v. Pelzer, 536 U.S. 730, 739 (2002).

Defendants are entitled to qualified immunity on the claims asserted by Plaintiff in this case. As discussed, *supra*, the facts do not show that any Defendant violated Plaintiff's constitutional rights. Even if Plaintiff's rights had been violated, none of the violations complained of by Plaintiff took place in circumstances where the right at issue was so clearly established that the Defendants would have been aware that they were acting unlawfully. Accordingly, summary judgment is granted against all Defendants on the alternative basis of qualified immunity.

G. Motion to Strike

Plaintiff did not seek leave to file his sur-reply to the Motion for Summary Judgment (#20). Sur-replies are not permitted without leave of the Court. The Court will not consider the documents filed by Plaintiff and the Motion to Strike is granted. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

III. Conclusion

**IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss/Motion for Summary Judgment (#11) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Strike (#21) is **GRANTED**.

DATED this 26th day of March 2012.

_____
Kent J. Dawson
United States District Judge